DECISION
This matter is before the court for decision after a jury waived trial.
The first witness presented at trial, William J. McGlinn, has been the general manager of the defendant's district since 1988. The defendant is a creature of the general assembly and operates under its own charter. Pursuant to its authority and responsibility the defendant can and must act with the objective of maintaining public health and safety. In July of 1991, the defendant "abandoned" a water main on Bleu Lane which would have provided service to two buildable lots owned by the plaintiff. "Abandonment" occurs when a water main is shut down and or "capped off." The district has the discretion to determine, on a case by case basis, when abandonment might be necessary to advance public welfare. According to Mr. McGlinn, this has occurred on only two occasions within the past twenty years. With reference to the abandonment in controversy, Mr. McGlinn explained that in the late 1980's the standard lining for water pipes was vinyl containing a resin thinned with the carcinogen, tetracholroethylene. Defendant's Exhibit "A" documents that Mr. McGlinn, at a July 16, 1991 meeting, recommended abandoning the Bleu Lane pipeline because it constituted a health hazard and a public nuisance. A motion by the defendant's members to endorse this recommendation was unanimously carried. It is uncontradicted in the evidence that the tetrachloroethylene level existed, at the applicable time, in an intolerable and unhealthy concentration.
The plaintiff had, in 1975, installed at his expense, an approved water main to provide water to his property which was not then subdivided into lots. Plaintiff comported with all of the requirements applied to developers who desired water main extensions to their properties; namely, he installed it at his own expense and had it approved and accepted by defendant. For approximately the succeeding ten years, plaintiff never requested a tie-in to the water main. Mr. Phillips testified that in the late 1980's there was a moratorium on the processing of applications for water service. He said he felt discouraged from applying and that Mr. McGlinn said, "do not apply because you won't get it." Therefore, plaintiff never filed a formal application. In his deposition, plaintiff testified, initially, that he did not file an application for service until 1994 (see TR. 30, LL 8-20); and subsequently, that he did not file one at all (TR. 31; LL 5-22)(TR; 32; LL 6-11). The defendant, however, complains that he received no notice of the intended Bleu Lane shut-off and was denied any opportunity to participate in hearings leading to that decision.
In any event, Mr. Phillips did not learn of the summer 1991 abandonment until December 2, 1992. He promptly requested that the defendant restore water service noting that the main had been approved. The department responded that since that acceptance, twelve years prior, it had owned and operated the water main and had complete authority to abandon it. Approximately two months later, the department presented Mr. Phillips with a proposal to re-establish water service to Bleu Lane, offering to share the cost of installation. Plaintiff maintains that the cost of restoring service should be borne entirely by the town. He also contends that at the time of abandonment the defendant could have doubled back on the main in a looping fashion which would have allowed service to continue. According to the testimony of Mr. McGlinn, however, such a configuration, in the plaintiff's circumstances, would have resulted in no differential in water pressure and therefore, no flow, hence, not a reasonable option.
The defendant also presented the testimony of Attorney David Fox, its counsel for the past fifteen years. He had advised the defendant, at the time of the abandonment, that its duty of prior notice was limited to property owners with pending applications, a group clearly not including the plaintiff.
Despite that fact, the plaintiff argues that the lack of notice to him violated his procedural due process rights because he had a protected property interest. An inchoate, potential, or expected property right is not clothed with constitutional protection. As our Supreme Court stated in Board of Regents v.Roth, 92 S.Ct. 2701 (1972) a complainant must demonstrate "a legitimate claim of entitlement." Once a water main is installed, albeit at plaintiff's expense, it is, in essence, dedicated to the defendant who approves and maintains it. Plaintiff never applied for tie-in service. The fact that he felt discouraged from doing so because of the existing moratorium is of no moment. Plaintiff is an experienced, sophisticated and educated businessman who was well-familiar with municipal requirements regulating development. Since he never completed the process necessary to perfect any property right, the defendant was under no obligation to notify him of its' plan to abandon the water main.
Even if the plaintiff did have a protected property interest, and the court declines to so find, there is no evidence to even remotely suggest that he was deprived of all economically viable use of his two lots as required by Lucas v. South CarolinaCoastal Council, 112 S.Ct. 2886 (1992).
Plaintiff also alleges that the defendant violated his civil rights because he was treated differently than other individuals who relied on continued water service. In order to sustain this claim the plaintiff would have to demonstrate that, under the guise of municipal authority, he was treated unfairly for some irrational reason; or, because he was placed in a suspect classification. The Constitution does not require that laws treat every individual exactly alike. Mlikotin v. City of Los Angeles643 F.2d 652 (9th Cir. 1981) citing Salyer Land Co. v. TulareLake Basin Water Storage Dist., 410 U.S. 719 (1973). The fact, in this case, that other customers of defendant were treated differently was not the result of an invidious distinction or an irrational classification. It is abundantly clear from the record that the overriding motivation for defendant's action was the elimination of a public health threat.
Short of shutting down the main, there was no alternative available to defendant which was economically feasible and conducive to maintaining the water supply. The defendant's actions were not only rational but constituted a warranted and necessary exercise of its "police power."
Finally, the town has no obligation to bear the expense of extension of the water main. At no point was Mr. Phillips treated differently than any other applicant. Moreover, he never completed the application process and thus secured no property interest. For that reason alone his claims must fail, regardless of what theory is advanced.
Therefore, the Court is compelled to enter judgment for the defendant as a matter of law.